THE BIDDLE ADVERTISING COMPANY, Plaintiff-Appellee, v. LLOYD A. FRY ROOFING COMPANY, Defendant-Appellant.

(No. 11793; ▮)

Fourth District—September 5, 1973.

Costigan, Wollrab, Fraker & Wochner, of Bloomington, (William F. Costigan, of counsel,) for appellant.

Markowitz, Lawrence, Lenz, Jennings & Naylor, of Bloomington, (Robert Markowitz and John Naylor, of counsel,) for appellee.

Mr. JUSTICE SMITH delivered the opinion of the court:

Plaintiff was agent for defendant. Plaintiff operates an advertising agency and defendant engaged its services. Plaintiff had suggested to defendant that it could enhance its sales by utilizing yellow-page advertising in telephone directories. Defendant agreed. Plaintiff then entered into a contract with Ruben H. Donnelley Company which handles such advertising. This was a written agreement between plaintiff and Donnelley and while there is a place for defendant to sign, it remained unsigned. The Agreement For National Yellow Page Service designated defendant as "AGENCY'S CLIENT", plaintiff as "PURCHASER", and Donnelley as "SELLING COMPANY". The contract read that any advertising ordered could be cancelled by plaintiff giving to Donnelley thirty day's notice prior to the closing date of the directory or directories concerned. While defendant was not a signatory to this contract—professed to have never seen it—there was evidence that it knew the terms thereof, particularly as to the thirty day cancellation clause. This is important, because the amount sought by plaintiff is for yellow page advertising in directories which had closing dates during the thirty days following notice of cancellation and there was evidence that a representative of plaintiff had explained to officers of defendant that notice must be given thirty days prior to the closing date of any given directory to effect cancellation. The arrangement for advertising began in September, 1966. On October 30, 1969, defendant cancelled its contract with Donnelley by letter and sometime thereafter (April) Donnelley acknowledged cancellation, which was effected for all directories which were scheduled to close after December 1, 1969. Defendant stated in its letter of October 30, that, "it is agreed we will start the 'phase out' program on our Yellow Sheet Advertising, effective November 1, 1969. No further advertising will be approved for directories coming up for reprint after November 1, 1969." Donnelley's letter in response acknowledged cancellation and continued, "We have issued cancellation orders for all directories which were scheduled to close on or after December 1, 1969. Any directory which closed prior to this date will be published and billed." Suffice it to say that during the three-year period there was extensive advertising for defendant for which Donnelley billed plaintiff

and plaintiff billed defendant, adding a 15% commission. There is no question but that the advertising services sued for were performed—and evidence by defendant that such services were poorly performed during the entire course of the contract is not germane to this appeal, if for no other reason than that an issue thereon was not made up by the pleadings. The circuit court held for plaintiff and entered judgment for the amount sought—$13,607.72.

Defendant says on review that there are no questions of a factual nature—that they are all "legal questions" involving (a) whether an agent (plaintiff) can recover against its disclosed principal (defendant) for an obligation allegedly due a third party (Donnelley) with whom the agent has conducted business, (b) whether an agent can recover against its principal on an obligation allegedly due a third party when the agent is advised of defenses in existence on behalf of the principal, and (c) whether an agent in discharging its duty to its principal can pay an account on behalf of the principal after being advised by the principal that no amounts are due. These questions we deem beside the point—the undercurrent through them all is that defendant was a "disclosed principal", hence the third party must look to the principal; a fortiori, the agent has no standing vis-à-vis the principal. But this admitted circumstance—a disclosed principal—is immaterial here because plaintiff was responsible for the payment of advertising services rendered by Donnelley to defendant.

This liability of the agent here comes about in two ways—the contract itself and the custom and usage of the trade or business in explanation of the contract. The contract called for Donnelley to render bills to plaintiff upon publication which were payable within 30 days. This indeed happened—Donnelley never billed defendant but always billed plaintiff. As to custom, the evidence disclosed that in the advertising business the agency is liable for payment of charges arising from advertising placed with a given media. Additionally, it was the credit rating of the agency here and not the client (defendant) that Donnelley would look to—"The general custom in the industry for contracts such as this as to the responsibility for the payment of bills is that the minute we took an order from Fry Roofing Company (defendant), we became financially responsible to the Donnelley Company where the advertising was placed. This has happened in tens of thousands of publications over the past 30 years. The Fry Roofing Company never paid directly to the Donnelley Company."

■■ We agree with the defendant that there are no factual issues. Defendant (as to plaintiff) was the client and principal, plaintiff (as to defendant) its advertising representative and agent, and Donnelley

(as to defendant) a third party but a contractual party with plaintiff as agent for defendant to whom services were to be rendered. Now, ordinarily, a contract made with an agent of a disclosed principal does not render the agent liable should his principal default. In this context, the agent and the principal are indistinguishable—if the agent is liable, the principal is liable and visa versa, but not otherwise—as to third parties, the liability of the principal is not the liability of the agent. (*Petrando-United States Law Printing Co. v. Barry*, 4 Ill.App.2d 319, 124 N.E.2d 85.) In 1 Ill. Law & Practice 766, Agency § 130 it is said:

> "It is considered a well settled principle of law in Illinois that an agent is not liable for the acts of a disclosed principal * * *.
>
> An agent acting within the scope of his authority is not liable on an undertaking or contract for the principal where he expressly discloses his agency or the person dealing with him knows of the agency *unless the agent binds himself either expressly or by inference to become personally responsible.*" (Emphasis supplied.)

Thus, as emphasized, this rule, as do most rules, has an exception or can be otherwise qualified—an agent can be liable if he agrees to be liable on a contract for the benefit of his principal. Both parties cite *Gieseke v. Hardware Dealers Mutual Fire Insurance Co.*, 46 Ill.App.2d 131, 195 N.E.2d 32. *Gieseke* does indeed affirm the general rule on which defendant relies but clearly states that an agent may become liable to a third party if he binds himself to become personally responsible or where credit has been "given expressly and exclusively to the agent and it appears that it was clearly his intention to assume the obligation as a personal liability and that he has been informed that credit has been extended to him alone." 3 Am.Jur.2d 654, Agency § 294 (1962).

■■ Here, the agent was personally liable to Donnelley by virtue of the contract between them. Donnelley thus could look to plaintiff, even though it knew it was an agent for defendant. Because this is so, the plaintiff had the right to sue its principal for its money obligations to the third party—and whether actually paid or not. That the third party could also sue the principal is beside the point—at least here because it has not done so. Indeed, it has sued neither. But the agent, recognizing its obligation, need not wait to be sued. It can opt as it did to sue its principal regardless of what it thinks the third party might do. We can surmise that Donnelley apparently was first looking to plaintiff rather than defendant and plaintiff knew it and acted before the "looking" took a more active form. The judgment of the circuit court and our affirmance is, of course, without prejudice as to any rights or remedies

that defendant may have against Donnelley. The judgment was composed of actual payments by plaintiff and amounts still owed to Donnelley by plaintiff plus a 15% commission on the top. Accordingly, the judgment appealed from is affirmed.

Judgment affirmed.

CRAVEN, P. J., and TRAPP, J., concur.